IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JACK SCULFORT )<br>c/o David G. Squillante, Esq. )<br>405 Madison Ave., Suite 1000 )<br>Toledo, Ohio 43604 )<br>  )<br>AND )<br>  )<br>MATTHEW L. DAPKUS )<br>on behalf of themselves and all others similarly )<br>situated, )<br>c/o David G. Squillante, Esq. )<br>405 Madison Ave., Suite 1000 )<br>Toledo, Ohio 43604 )<br>  )<br>          Plaintiffs, )<br>  )<br>vs. )<br>  )<br>Chrysler Group, LLC, a Delaware Corporation )<br>1000 Chrysler Drive )<br>Auburn Hills, Michigan 48326-2766 )<br>  )<br>          Defendant. ) | Case No.<br><br><br><br><br><br><br>**CLASS ACTION** |

## CLASS ACTION COMPLAINT

Plaintiffs, individually and on behalf themselves and all others similarly situated, respectfully allege on information and belief as follows:

- 2 -

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs, Jack Sculfort is a citizen of the State of Ohio and is a resident of Wood County, which is located within the court's federal district. Matthew L. Dapkus is a citizen of the State of South Carolina, the state in which an accident occurred which gave rise to an investigation of the product defects which are hereafter alleged.

2. Defendant, Chrysler Group, LLC is a foreign corporation domiciled in the State of Delaware, with its principal executive offices located in Auburn Hills, Michigan. Defendant is registered to do, and is conducting business within, the State of Ohio including at its manufacturing facilities located in Lucas and Wood Counties, which are within the jurisdiction of this court.

3. This Court has original jurisdiction over this class pursuant to 28 U.S.C. Sec. 1332(d) (the Class Action Fairness Act of 2005) since the matter in controversy substantially exceeds the sum or value of $5,000,000, exclusive of interest or costs; there are reasonably believed to be in excess of 1,000,000 members of the proposed class; and, at least one member of the class is a citizen of a different state than defendant. Venue is proper in this case pursuant to 28 U.S.C. Sec. 1391.

## CLASS ALLEGATIONS

4. This action is brought as a class action under the provisions Fed. R. Civ. P. 23(a) and Fed. R. Civ. P 23(b)3.

5. The class of plaintiffs in this action consists of all current registered owners of Jeep Grand Cherokee's for model years 1993-1998 ("Class 1 Plaintiffs") and for model years 1999-2004 ("Class 2 Plaintiffs") manufactured by Chrysler LLC ("Old CarCo").

6. The exact number of members of Class 1 Plaintiffs and Class 2 Plaintiffs is not known, but Old Carco's records indicate that 1,506,288 Jeep Grand Cherokees were manufactured

- 3 -

during model years 1993-1998 and 1,462,626 Grand Cherokees were manufactured during model years 1999-2004. Regardless of the number of vehicles remaining in use, the number of Class 1 Plaintiffs and Class 2 Plaintiffs is so numerous that joinder of individual members would be impracticable.

7. On April 30, 2009, Old CarCo filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code.

8. On June 10, 2009, Old CarCo sold substantially all of it assets to New CarCo Acquisition LLC whose name was subsequently changed to the corporate name now used by defendant. Pursuant to the sales transaction, defendant agreed to assume responsibility for safety recalls for vehicles that were manufactured and sold by Old CarCo prior to the June 10, 2009 asset sale.

9. Defendant's undertaking to accept liability for claims relating to, or arising out of, faulty and defective products manufactured and sold by Old Carco prior to the June 10, 2009 asset sale was reiterated and expanded by John Bozella, senior Vice President of defendant on August 27, 2009, in response to the demands of multiple consumer organizations.

10. Defendant's undertaking and liability for defective design and/or products on vehicles manufactured by Old CarCo was evidenced and affirmed on March 7, 2012, when it announced a recall of about 267,000 Jeep Liberty SUV's manufactured by Old CarCo between July 3, 2003 and July 14, 2004 (Model Years 2004 and 2005) due to a problem of excessive corrosion which put the vehicle at risk for weakened components and potential fractures of rear lower control arms.

- 4 -

11. There exist common questions of law and fact for all members of the class and specialized common questions of fact for Class 1 Plaintiffs and Class 2 Plaintiffs, as well as common relief sought for the entire class, namely:

    A. The design, construction, and location of the 1993-2004 Jeep Grand Cherokee's component parts of the fuel delivery and containment systems of all vehicles;

    B. Whether the location of the fuel tank in all vehicles behind the rear axle (and with a part of the tank exposed below the rear bumper) created an unreasonable risk of fire and fire related injury or death in the event of rear or side impact collision;

    C. Whether the plastic fuel tank installed on the 1993-1998 model year vehicles ("Class 1 Vehicle(s)") was sufficiently designed and constructed in a manner which would not rupture and/or leak fuel in the event of rear or side impact collision which would unreasonably create a risk of fire and fire related injury or death;

    D. Whether the failure to include skid plates to protect the fuel tank as a standard feature on Class I Vehicles, instead of as an option, created an unreasonable risk of fire and fire related injury or death in the event of a rear or side impact collision;

    E. Whether purchasers of Class 1 Vehicles received reasonable notice of the importance of skid plates to reduce the potential for puncture of the fuel tank and fuel leakage when driving off-road or in the event of rear or side impact collision;

    F. Whether the design and routing of the fuel filler hose through the frame rail (which was without industry precedent) and its connection(s) to the fuel intake port and the fuel tank in Class 1 Vehicles created an unreasonable risk of fire and fire related injury or death because of

- 5 -

the likelihood of the filler tube being pulled out of the fuel tank in the event of side or rear impact collision as the frame rail moves upward;

   G. Whether the substitution of a multi-layered, plastic fuel tank and brush plates (then a standard feature) in the 1999-2004 model year vehicles ("Class 2 Vehicle(s)") significantly reduced the potential of fire and fire related injury or death in the event of rear or side impact collision;

   H. Whether the relocation of the fuel filler hose under a redesigned, solid frame rail and the connection of the filler hose to the fuel tank in the Class 2 Vehicles significantly reduced the potential of fire and fire related injury or death in the event of a rear or side impact collision;

   I. Whether the redesigns in the Class 2 Vehicles made the filler hose more susceptible to separating from the filler cap housing and inlet pipe at the fuel filler port created an unreasonable risk of fire and fire related injury or death in the event of rear or side impact collision;

   J. Whether the failure of the design and means of connecting the fuel filler hose to the fuel filler port and/or the fuel tank created an unreasonable risk of separation and leakage in both Class 1 Vehicles and Class 2 Vehicles of fire and fire related injury or death in the event of a rear or side impact collision or rollover.

   K. Whether the failure to have an effective check valve in the fuel tank of Class 1 Vehicles and Class 2 Vehicles (similar to check valves used in other vehicles of the same class which would stop fuel flow if the fuel filler hose pulled loose during a collision or rollover) created a predictable and unreasonable risk of fire and fire related injury or death;

   L. Whether the design, manufacture, location, and installation of any or all of the described component parts of the Jeep Grand Cherokee fuel delivery and containment systems

- 6 -

present an unreasonable risk of fire and fire related injury or death to not only occupants of a Class 1 Vehicle or Class 2 Vehicle in the event of collision or rollover, but also public responders and others who might attempt to come to the aid of victims;

M. Whether the defects and conditions complained of continue to exist in the Class 1 Vehicles and Class 2 Vehicles owned by members of the proposed class and present a clear and present danger and an unreasonable risk of fire related injury or death in the event of rear or side impact collision or rollover; and,

N. What repairs, replacements, or modifications are reasonably necessary to eliminate or reduce the risks of fire and fire related injury created by the defective design, manufacture, location and installation of the identified component parts of the Jeep Grand Cherokee fuel delivery and containment systems for model years 1993-2004, inclusive.

12. The claims of the named plaintiffs are typical of the claims of the class in that all the members of the class, including plaintiffs, depend upon proving that the acts or omissions of Old CarCo (for which defendant has expressly assumed responsibility) give rise to the right of plaintiffs to the relief sought.

13. There is no conflict between any individually named plaintiff and other members of the class with respect to this action, or with respect to the claims for relief set forth in this complaint.

14. The named plaintiffs are representative parties for the class and are willing and able to fairly and adequately protect the interests of the class.

15. Upon certification of the class initial counsel will propose to the court names of counsel experienced in class action litigation who will satisfy the requirements of Fed. R. Civ. P. 23(g)(C)(i) to serve as lead counsel in the advancement and proof of the claims asserted by the class.

- 7 -

16. This action is properly maintained as a class action because the questions of law and fact are common to the members and predominate over any questions affecting only individual members, and the class is superior to other available methods for the fair and efficient adjudication of the controversy.

17. In support of the allegations contained herein, plaintiffs have relied upon the extensive and independent research of the Center for Auto Safety ("CAS") which has documented 185 fatal fire crashes of Jeep Grand Cherokees for model years 1993-2004, inclusive, which have resulted in 270 deaths and numerous severe burn injuries and the findings of independent crash and fuel system leakage tests which conclusively support plaintiffs allegations that the design, construction and location of multiple components of the fuel delivery and containment systems create a clear and present danger and an unreasonable risk of fire and fire related injury or death in the event of a rear or side impact collision or rollover.

18. In further support of their allegations, plaintiffs allege Old CarCo knew of certain design and material defects which are common in the Class 1 Vehicles and in response to owner complaints, the filing of litigation, and the settlement of damage claims for fire related injuries and deaths, made several design and material modifications to the Class 2 Vehicles in what proved to be unsuccessful attempts to lessen the vehicles' risk of fire and fire related injury or death in the event of rear or side impact or rollover.

19. Commencing with the production of the 2005 model year, the Jeep Grand Cherokee underwent major design modifications including most relevant herein, the relocation of the fuel tank forward of the rear axle; multiple modifications to the design and routing of the fuel filler hose; and,

- 8 -

the installation of stop check valves which had been standard for competing manufacturers for more than a decade.

20. As a consequence of such redesign, construction and relocation of multiple component parts of the fuel delivery and containment systems, there has been a dramatic decrease in the number of fires and fire related injuries and deaths following rear and side impact collisions and rollovers of Jeep Grand Cherokees.

21. The common issue between plaintiffs and among all proposed members of the class is whether the multiple defects in the design, construction and location of component parts of the fuel delivery and containment systems of all Class 1 Vehicles and all Class 2 Vehicles predominates over any individual issue of fact such as the age, extent of use, and maintenance history for each class members' vehicle.

22. All Class 1 Vehicles and all Class 2 vehicles remain in the opinion of CAS "the most dangerous vehicle on the road today".

23. The number of deaths from fire substantially exceed those involving the Ford Pinto and, unless and until these known defects are remedied by a recall, every Class 1 Vehicle and Class 2 Vehicle is a rolling time bomb which will continue to expose occupants and others to unreasonable risk of fire and fire related injury or death in the event of rear or side impact collision or rollover.

24. The on September 1, 2011, CAS requested that defendant initiate a voluntary recall. This request was repeated on November 17, 2011, and included notification that another life had been claimed and several people were severely burned in Orlando, Florida accident. Speaking on behalf of the organization Executive Director Clarence Ditlow asked "…how many more fatal fire

- 9 -

crashes will it take before Chrysler [defendant] recalls this Pinto for soccer moms?" CAS received no response.

25. It would not be convenient or cost effective for plaintiffs and all proposed class members to individually undertake responsibility for remedying the known defects and thereafter seek reimbursement from defendant through voluntary payments or individual litigation. Such alternatives would also be ineffective since it would not address and resolve the greater need and concern for public safety.

WHEREFORE, Plaintiffs, Jack Sculfort and Matthew L. Dapkus on behalf of themselves and all others similarly situated members of the proposed class, demand a trial by jury on all claims so triable in this action and for the following relief:

1. The class as described in this complaint be certified, and the rights of the members of the class defined in this complaint be adjudicated and declared;

2. Plaintiffs be awarded damages in the amount of $25,000.000.00 according to proof;

3. Plaintiff class members be awarded the relief requested herein according to proof;

4. Equitable relief in the form of a recall of all Class 1 Vehicles and Class 2 Vehicles shall be awarded and defendant shall be Ordered to make the following repairs and replacements without charge or cost to any member of the class:

    A. Installation on all Class 1 Vehicles of a frame rail reinforcement bracket;

    B. Installation on all Class 1 Vehicles and Class 2 Vehicles of skid plates if not already installed;

    C.    Installation on all Class 1 Vehicles and Class 2 Vehicles of an effective check valve system to shut off the flow of fuel if the fuel filler hose is pulled out of the fuel tank or filler neck;

    D.    Installation on all Class 1 Vehicles and Class 2 Vehicles of additional shields to protect the fuel tank from puncture and leakage from sharp objects in the crush zone on impact; and,

    E.    Installation, repair or replacement in all Class 1 Vehicles and Class 2 Vehicles of such other component parts of the fuel intake, delivery, and containment systems as may be determined by expert testimony to be reasonable and necessary to substantially reduce the risk of fire and fire related injury or deaths in the event of rear or side impact collision or rollover.

5.    Subsequent to implementing the recall and installations, defendant should be ordered to conduct public crash tests to demonstrate the effectiveness of the vehicle modifications and, if the results of such tests establish that additional modifications are needed, then this court shall retain jurisdiction for the purpose of determining the appropriateness of additional modifications;

6.    Plaintiffs be awarded a reasonable monetary sum for acting as class representatives;

7.    Plaintiffs and plaintiff class members be awarded attorneys' fees in accordance with Fed. R. Civ. P. 23;

8.    Plaintiffs and plaintiff class members be awarded all taxable costs of suit and interest at the legal rate on all amounts awarded from the date of entry until paid;

- 11 -

9. Undersigned counsel be appointed to act as co-counsel with additional counsel to be appointed by the court who satisfy the requirements of Fed. R. Civ. P. 23(g)(C)(i); and,

10. For such other relief as the court deems just and proper under the circumstances.

Respectfully submitted,

/S/ David G. Squillante
David G. Squillante, Esq.
405 Madison Ave., Suite 1000
Toledo, Ohio 43604
Telephone: (419) 243-8003
Fax: (419) 246-5764
dgslaw@buckeye-express.com
Attorney for Plaintiffs